UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AFFILIATED ORTHOPAEDIC SPECIALISTS, P.A.,<br><br>Plaintiff,<br><br>-against-<br><br>ADVANTEK BENEFIT ADMINISTRATORS,<br><br>Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff Affiliated Orthopaedic Specialists, P.A. ("Plaintiff"), on assignment of Linda G., by and through its attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against Advantek Benefit Administrators ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a New Jersey medical practice registered to do business in the State of New Jersey with a principal place of business at 2186 State Highway 27, North Brunswick, New Jersey 08902.

2. Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

**FACTUAL BACKGROUND**

4. Plaintiff is a medical practice comprised of physicians that specialize in orthopedic surgery.

1

5. On July 24, 2018, one of Plaintiff's physicians, Dr. Shawn Sieler, M.D., performed surgical treatment on Linda G. ("Patient") to repair a humerus fracture. (*See*, **Exhibit A**, attached hereto.)

6. At the time of her treatment, Patient was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

7. Patient assigned her applicable health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

8. After the subject medical treatment, Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the treatment provided to Patient in the total amount of $12,656.00. (*See*, **Exhibit C**, attached hereto.)

9. Included in Plaintiff's medical bill was a $450.00 charge for a preoperative evaluation that took place on July 23, 2018, the day before Patient's surgery.

10. As an out-of-network medical practice, Plaintiff does not have a network contract with Patient's insurer that would determine or limit Plaintiff's reimbursement for the subject treatment.

11. In response to Plaintiff's medical bill, Defendant issued payment in the total amount of $1,881.37 and indicated that the remaining $10,774.63 was neither Patient's nor Patient's insurance plan's liability. (*See*, **Exhibit D**, attached hereto.)

12. The applicable Explanation of Benefits further indicated that payment was rendered "in accordance with United Claims Solutions Negotiated Agreement." *Id*.

13. Defendant's reference to a negotiated agreement, as well as its representation that Patient did not have any liability towards Plaintiff's unpaid charges, indicate that Defendant incorrectly processed Plaintiff's claim as an in-network claim.

14. On or around July 9, 2019, Plaintiff submitted an internal appeal to Defendant challenging Defendant's payment determination as inconsistent with the terms of Patient's insurance plan. (*See*, **Exhibit E**, attached hereto.)

15. On or around August 21, 2019, Defendant issued an appeal response stating that Plaintiff's claim was processed "as the provider being in network with Inetico." (*See*, **Exhibit F**, attached hereto.)

16. Defendant's appeal response confirms that Defendant incorrectly processed Plaintiff's claim as an in-network claim and yet Defendant took no corrective action to reprocess Plaintiff's claim.

17. On or around January 22, 2020, Plaintiff submitted a second and final internal appeal to Defendant, again asserting that Defendant misprocessed Plaintiff's claim, and emphasizing that Plaintiff is an out-of-network provider. (*See*, **Exhibit G**, attached hereto.)

18. In response to Plaintiff's second internal appeal, Defendant issued an appeal response stating that Plaintiff's claim was processed by calculating payment based upon 150% of the applicable Medicare rate for the treatment performed, and that Plaintiff's unpaid charges in the amount of $10,774.63 are Patient's responsibility. (*See*, **Exhibit H**, attached hereto.)

19. Upon information and belief, Defendant's reimbursement of $1,881.37 cannot have been based entirely upon a multiple of Medicare reimbursement rates because there is no Medicare reimbursement rate for Current Procedural Terminology ("CPT") Code 99253, one of the CPT Codes billed for Patient's treatment.

20. Moreover, upon information and belief, under the terms of Patient's insurance plan, out-of-network medical claims are subject to reasonable and customary reimbursement rates rather than reimbursement rates based upon Medicare.

21. Thus, upon information and belief, Defendant did not process Plaintiff's claim for Patient's July 9, 2018 treatment in accordance with the terms of Patient's insurance plan.

22. On January 9, 2019, Shawn Sieler, M.D. performed an additional surgical procedure on Patient. (*See*, **Exhibit I**, attached hereto.)

23. Specifically, on January 9, 2019, Dr. Sieler performed arthroscopic surgery on Patient's right knee to treat a meniscus tear. *Id*.

24. Plaintiff subsequently submitted a HCFA medical bill to Defendant seeking payment in the amount of $8,654.00. (*See*, **Exhibit J**, attached hereto.)

25. In response to Plaintiff's bill, Defendant issued payment in the amount of $2,955.66 and attributed an additional $2,955.66 towards Patient's coinsurance. (*See*, **Exhibit D**.)

26. The remaining $2,742.68 in Plaintiff's charges were denied pursuant to Defendant's determination that this amount exceeded the reasonable and customary rate for Patient's treatment. *Id*.

27. Defendant's processing of Plaintiff's claim relating to date of service January 9, 2019 in accordance with what Defendant deemed reasonable and customary rates illustrates that Patient's insurance plan entitles Patient to reasonable and customary medical benefits for out-of-network treatment.

28. Thus, by processing Plaintiff's claim relating to date of service July 9, 2019 based upon Medicare rates, Defendant failed to process that claim in accordance with the terms of Patient's insurance plan.

29. At the very least, by processing one claim based upon Medicare rates and another claim based upon reasonable and customary rates, Defendant has applied an arbitrary procedure to its claims processing.

30. Moreover, Plaintiff's billed charge for the treatment performed on January 9, 2019 was consistent with reasonable and customary rates for the applicable geographic area. Thus, Defendant's reasonable and customary reduction was wrongful and inconsistent with the terms of Patient's insurance plan.

31. Plaintiff submitted multiple internal appeals challenging Defendant's reimbursement for date of service January 9, 2019 as inconsistent with the terms of Patient's insurance plan.

32. However, Defendant failed to issue any additional reimbursement, and instead issued responses to Plaintiff's appeals that were incomprehensible to Plaintiff with respect to Defendant's processing of the subject claim.

33. In addition, while Plaintiff requested a copy of Patient's summary plan description, Defendant failed to provide it. (*See*, **Exhibit G**.)

34. Upon information and belief, Defendant failed to issue reimbursement for Plaintiff's treatment of Patient in accordance with the terms of Patient's insurance plan.

35. The total amount billed for Plaintiff's treatment of Patient on the two dates of service at issue is $21,310.00.

36. The total amount paid by Defendant for Plaintiff's treatment of Patient is $4,837.03.

37. Upon information and belief, the total amount Defendant should have paid Plaintiff for Patient's treatment under the terms of Patient's insurance plan is $18,354.34.

38. Thus, Plaintiff has been damaged in the total amount of $13,517.31.

39. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## COUNT ONE

### FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 of the Complaint as though fully set forth herein.

41. Plaintiff avers this Count to the extent ERISA governs this dispute.

42. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

43. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

44. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

45. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

46. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 of the Complaint as though fully set forth herein.

48. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

49. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

50. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

51. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

52. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

53. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the

administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

54. Here, when Defendant acted to deny payment for the medical bills at issue herein, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

55. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order directing Defendant to pay Plaintiff $13,517.31;
B. For an Order directing Defendant to pay Plaintiff all benefits Patient would be entitled to under the insurance plan or policy issued by Defendant;
C. For compensatory damages and interest;
D. For attorney's fees and costs of suit; and
E. For such other and further relief as the Court may deem just and equitable.


Dated: New York, New York
May 14, 2020

                                             SCHWARTZ SLADKUS
                                             REICH GREENBERG ATLAS LLP
                                             *Attorneys for Plaintiff*


By:   /s/ Michael Gottlieb
       Michael Gottlieb
       444 Madison Avenue
       New York, New York 10022
       (212) 743-7054